**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 17-cv-61361-BLOOM/Valle**

CARMELLA A. GELBART,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
NANCY A. BERRYHILL,

      Defendant.

_____/

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Plaintiff's and Defendant's Motions for Summary Judgment, ECF Nos. [13] and [14], which were previously referred to the Honorable Alicia O. Valle for a Report and Recommendation. *See* ECF No. [4]. On August 22, 2018, Judge Valle issued a Report and Recommendation, recommending that Plaintiff's Motion for Summary Judgment be denied, Defendant's Motion for Summary Judgment be granted, and the Administrative Law Judge's ("ALJ") Decision be affirmed. *See* ECF No. [23]. Plaintiff timely filed her Objections and the Government thereafter filed a timely Response. *See* ECF Nos. [24] and [25]. The Court has considered Plaintiff's Objections, the Government's Response, and has conducted a *de novo* review of Magistrate Judge Valle's Report and Recommendation and the record, and is otherwise fully advised. *See Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009) (citing 28 U.S.C. § 636(b)(1)). Plaintiff interposes two separate objections to the Report and Recommendation. The Court has considered each objection and finds that they are due to be overruled for the reasons that follow.

I.    BACKGROUND

The Court adopts Judge Valle's description of the administrative history and record below, ECF No. [23] at 2, and incorporates it by reference herein.

II.    LEGAL STANDARD

Plaintiff does not object to Judge Valle's recitation of the standard for judicial review of a final decision by the Commissioner of the Social Security Administration, which, in any event, is correct.  As stated in the Report and Recommendation, ECF No. [23] at 2-3, judicial review of the ALJ's decision is limited to whether there is substantial evidence in the record as a whole to support the ALJ's finding and whether the ALJ applied the correct legal standards in making her determination. *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *see also* 42 U.S.C. § 405(g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Carson*, 440 F. App'x at 864 (quoting *Crawford*, 363 F.3d at 1158); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).  A court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal citation omitted).  Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Within this narrow role, however, courts do not act as automatons. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Rather, a court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citing *Bloodsworth*, 703 F.2d at 1239).

The Report and Recommendation properly stated the legal and regulatory standards an ALJ must employ in making a determination as to eligibility for disability insurance benefits. ECF No. [23] at 3-4. A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings")?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a)(4). An affirmative answer to any of the above questions leads either to the next question, or, on Steps 3 and 5, to a finding of disability. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). A negative answer to any question, other than Step 3, leads to a determination of "not disabled." *Id.*

Importantly, the burden of proof rests on the claimant through Step 4. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). At Step 4, the ALJ must assess: (i) the claimant's residual functional capacity ("RFC"); and (ii) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The regulations define RFC as that which an individual is still able to do despite the limitations caused by her impairments. 20 C.F.R. § 404.1545(a). The ALJ will "assess and make a finding about [the claimant's RFC] on all the

relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). The RFC

determination is used to determine whether the claimant can return to her past relevant work

under the fourth step, and if so, "the ALJ will conclude that the claimant is not disabled."

*Phillips*, 357 F.3d at 1239 (citations omitted). Otherwise the ALJ proceeds to Step 5.

At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to

determine whether the claimant "can make an adjustment to other work." 20 C.F.R.

§ 404.1520(a)(4)(v); *Phillips*, 357 F.3d at 1239. The ALJ must determine if there is other work

available in significant numbers in the national economy that the claimant has the ability to perform.

357 F.3d at 1239. If the claimant can make the adjustment to other work, the ALJ will determine that

the claimant is not disabled. *Id.* Conversely, if the claimant cannot make the adjustment to other

work, the ALJ will determine that the claimant is disabled. *Id.* The ALJ may determine whether the

claimant has the ability to adjust to other work in the national economy by either: (1) applying the

Medical Vocational Guidelines (contained within 20 C.F.R. part 404, Subpart P, Appendix 2); or (2)

using a Vocational Expert, who can opine on whether someone with the claimant's limitations can

obtain employment in the national economy. *Id.* at 1239-40.

### III.    DISCUSSION

#### i.    Objection Number One: The ALJ Failed to Properly Weigh the Medical Opinion Evidence

Plaintiff argues that the ALJ improperly afforded little weight to the opinions of

Plaintiff's three treating doctors, Drs. Kaplowitz, Gomez, and Seidman.

When evaluating physician opinion evidence, an ALJ is required to give proper

consideration to the factors set forth in 20 C.F.R. § 404.1527. *See Russ v. Astrue*, 2009 WL

764516, at *9 (M.D. Fla. Mar. 20, 2009) ("The ALJ commits legal error when he fails to

consider and discuss the § 404.1527(d) factors before discrediting a treating physician's

opinion."). The regulatory factors include: (1) the examining relationship; (2) the treatment relationship; (3) supportability of the opinion by medical signs and laboratory findings; (4) consistency of the opinion with the record as a whole; (5) the specialization of the source of the opinion; and (6) any other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527.

A treating physician's opinion must be given "substantial or considerable weight unless 'good cause' is shown to the contrary." *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (citing *Lewis*, 125 F.3d at 1439); *accord Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991) ("[T]he opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis."). "The Eleventh Circuit has found there is "good cause" to place less weight on the opinion of a treating physician where: (1) the opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the opinion was conclusory or inconsistent with the doctor's own medical records." *Russ*, 2009 WL 764516 at *9 (citing *Wright*, 153 F. App'x at 684); *accord Winschel*, 631 F.3d at 1179 ("Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.") (quoting *Phillips*, 357 F.3d at 1241). "The law is clear that . . . the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (citation omitted).

An ALJ's decision will not be upset where supported by substantial evidence. However, a decision which focuses on one aspect of the evidence while disregarding or failing to properly evaluate other, contrary evidence is not considered to be based on substantial evidence.

*McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). "In determining whether substantial evidence exists, [a court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision." *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990). Further, regardless of the existence of support in the record, an ALJ's determination cannot be affirmed where she has "fail[ed] to . . . provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted[.]" *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (internal quotation marks omitted).

The Court finds that the ALJ applied the correct legal standard and her determination to afford the medical opinions little weight is well supported. Consistent with Magistrate Judge Valle's Report and Recommendation, the ALJ properly considered the opinions of Drs. Kaplowitz, Gomez, and Seidman, specifically assigned them "little weight," and articulated her reasons for doing so, all of which is supported by substantial evidence.

First, although the ALJ did not specifically enumerate and discuss by name the regulatory factors listed in 20 C.F.R. § 404.1527, it is evident from reviewing the ALJ's decision as a whole that she considered these factors in her analysis. For example, the ALJ discussed the treatment relationship between the Plaintiff and Dr. Kaplowitz (factor 2), the evaluation relationship between Plaintiff and Dr. Seidman (factor 1), and the supportability and consistency of the doctors' opinion vis-a-vis other evidence in the record (factors 3 and 4). *See* ECF No. [10] at 55-56. Thus, the ALJ applied the proper legal standard.

Second, the ALJ articulated "good cause" to give limited weight to the opinions of Drs. Kaplowitz, Gomez, and Seidman.

The ALJ expressly gave Dr. Kaplowitz's December 2013 psychiatric impairment questionnaire "little weight." Specifically, the ALJ referenced the record and explained that Dr. Kaplowitz's December 2013 opinion that Plaintiff is incapable of even low stress work was not supported by the medical record as a whole. ECF No. [10] at 55 The ALJ found that there is absolutely no objective medical evidence prior to March 31, 2010 reflecting the extent of symptomatology endorsed by Dr. Kaplowitz or evidence that the claimant's mental condition resulted in the type of limitations opined by Dr. Kaplowitz. *Id.* The ALJ also noted that Dr. Kaplowitz's opinion "relied quite heavily on the subjective report of symptoms and limitations provided by the claimant." *Id.* at 56.

A review of the record supports the ALJ's decision that Dr. Kaplowitz's opinions on the severity of the claimant's conditions are unsupported by and inconsistent with the medical record as a whole. Dr. Kaplowitz treated Plaintiff from November 1995 through September 2012, and completed a psychiatric impairment questionnaire on December 26, 2013. ECF No. [10] at 324-25. The record contains only one and a half pages of handwritten notes spanning six years of treatment. *Id.* Records dated March 3 and March 29, 2010 reflect that Plaintiff was "doing very well" and had no abnormalities except "issues of menopause." *Id.* at 55, 325. Dr. Kaplowitz's progress notes dated after the date last insured also fail to include any examination findings, abnormalities, or functional limitation. *Id.* at 55, 324-25.

Plaintiff concedes that Dr. Kaplowitz's treatment notes lack detail, but argues that they do not contain any findings contradicting the December 2013 questionnaire, and cites several cases purportedly standing for the proposition that "the lack of functional limitations recorded in treatment notes does not render the opinions unsupported." ECF No. [24] at 2-3. In each of Plaintiff's cases, however, the opining doctors' treatment notes contained substantial evidence

7

supporting the doctor's opinion.[1]  In contrast, Dr. Kaplowitz 's treatment notes contain no

evidence supporting the December 2013 questionnaire.  Thus, the ALJ had good cause to afford

Dr. Kaplowitz's opinion little weight.  *See Crawford* 363 F.3d 1159.  Accordingly, substantial

evidence supports the ALJ's decision.

The ALJ also gave "little weight" to the opinions of Dr. Gomez.  In explaining her

decision to afford "little weight" to Dr. Gomez's opinions, the ALJ stated:

> With regard to Dr. Gomez's opinions, the undersigned notes that he confirmed
> that he first treated the claimant on January 9, 2013.  This, of course, is well after
> the claimant's date last insured.  Nevertheless, Dr. Gomez did state that the
> claimant's symptoms and limitation went back to the "early 1990's." . . . Once
> again, outside of the claimant's own subjective complaints, there is absolutely no
> evidence to corroborate this statement.  Without the necessary objective medical
> evidence, there is no support for the claimant's (or Dr. Gomez's) assertions.

ECF No. [10] at 56.

As Judge Valle accurately recounted, Dr. Gomez was Plaintiff's treating psychiatrist

from January 2013 through February 2016.  *Id.* at 262-78, 286-311.  Plaintiff visited Dr. Gomez

approximately 20 times, and the visits are reflected in treatment records.  *Id.*  In addition to the

treatment notes, Dr. Gomez authored three opinions regarding Plaintiff's mental health:  (1) a

PIQ dated November 22, 2013; (2) a letter dated August 8, 2014; and (3) an MIQ dated October

30, 2015.  *Id.* at 243-50, 279, 281-85.  In each of these opinions Dr. Gomez found Plaintiff

severely limited and unable to work.  *Id.*

---

[1] *See Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 736 (11th Cir. 2017) ("the notes also reflect [claimant]'s repeated complaints of worsening pain and throbbing in his feet and limbs . . ."); *Brownawell v. Comm'r Of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) ("This opinion [of claimant's disability] was reiterated in [the treating doctor's] May 5, 2003 treatment notes."); *Leckenby v. Astrue*, 487 F.3d 626, 633 (8th Cir. 2007) ("[Claimant]'s medical records are replete with consistent complaints of chronic pain, chronic fatigue and non-restorative sleep at night, and with treatment notes such as '[p]oorly tolerant of any activity because of worsening pain' . . ."); *Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007) ("The record contains numerous reports from [claimant]'s health care providers, as well as results from medical tests and laboratory findings, that support the questionnaires completed by [the treating doctors].").

Plaintiff argues that Dr. Gomez's opinions are not based on Plaintiff's subjective

complaints because they are "on all fours with the treatment notes from Dr. Gomez." ECF No.

[24] at 3. But the record reflects that Dr. Gomez did not begin treating Plaintiff until three years

after her date last insured and any opinions about her symptoms and limitations prior to March

31, 2010 were most likely based on Plaintiff's self-report. Tellingly, Dr. Gomez's notes

identified Plaintiff's symptom onset date "[a]s per patient report." ECF No. [10] at 250.

Additionally, at the hearing before Judge Valle, Plaintiff's counsel conceded that Dr. Gomez's

statement that Plaintiff's disability dates back to the early 1990's "probably come[s] from

listening to [Plaintiff] or asking her specific questions . . . about [what] her functioning was

during the period of time when she starts to see Dr. Kaplowitz in '95 . . . I have to assume it's

based on his questions [of Plaintiff]." ECF No. [22] at 33:10-17. The Court is unpersuaded by

Plaintiff's argument.

Finally, the ALJ also afforded Dr. Seidman's opinions "little weight." ECF No. [10] at

56. As the Judge Valle explained, the ALJ properly considered that Dr. Seidman was a one-time

examiner, she examined Plaintiff six years after the date last insured, her examination was not

for medical treatment, and there was no objective evidence to support Dr. Seidman's conclusion.

*Id.* at 56-57; *see* 20 C.F.R. § 404.1527(c)(4) ("the more consistent an opinion is with the record

as a whole, the more weight we will give to that opinion"); *McSwain v. Bowen*, 814 F.2d 617,

619 (11th Cir. 1987) (unlike treating physicians, opinions from one-time examiners are not

entitled to special deference or weight). Moreover, Plaintiff's counsel conceded that the only

records Dr. Seidman relied upon to find disability before March 31, 2010 were Dr. Kaplowitz's

and Dr. Gomez's records, which are insufficient for this purpose. ECF No. [22] at 30:5-10.

Plaintiff argues that Dr. Seidman's opinion should not have been rejected because Dr.

Seidman made similar findings to those of other treating sources and because medical opinions

cannot be rejected on the basis that they were offered at the request of a claimant's

representative. ECF No. [24] at 4. Plaintiff misconstrues the basis for the ALJ's determination.

The ALJ did not reject Dr. Seidman's findings because they were offered at the request of a

claimant's representative. Rather, the overriding basis for the ALJ discounting Dr. Seidman's

opinions was the lack of objective evidence to support the severe limitations. ECF No. [10] at

56. Additionally, Dr. Seidman conducted the evaluation six years after the date last insured,

ECF No. [10] at 312, 319, and there was no objective medical evidence substantiating Dr.

Seidman's opinion regarding Plaintiff's condition prior to March 31, 2010.

> **ii.**      **Objection Number 2: The ALJ Failed to Properly Evaluate Ms. Gelbart's Testimony**

Plaintiff also objects on the ground that the ALJ did not give proper weight to her

testimony. *See* ECF No. [24] at 5-7. As with the previous objection, the Court has conducted a

*de novo* review of the record.

The Eleventh Circuit has established a three-part "pain standard" that applies when a

claimant attempts to establish disability through her own testimony regarding pain or other

subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The ALJ is not

required to use any particular language in applying the pain standard, as long as she sufficiently

articulates the reasons for discrediting Plaintiff's testimony. *Davis v. Barnhart*, 153 F. App'x

569, 571 (11th Cir. 2005); *see also Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (ALJ

opinion need not use particular language or adhere to a particular format, and the decision should

be read "as a whole").

"A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (citing *MacGregor v. Bowen,* 786 F.2d 1050, 1054 (11th Cir. 1986)). The Court is also mindful that "credibility determinations are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (citing *Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir. 1984)).

Here, as summarized by Judge Valle, the ALJ articulated the following reasons for discrediting Plaintiff's pain testimony: (1) Plaintiff testified that, during the relevant period, she experienced "meltdowns" a "couple of times a week," but Plaintiff was never hospitalized for any such condition; (2) Plaintiff's purported "meltdowns" did not require additional treatment from her treating doctor other than "quarterly" phone calls; (3) Plaintiff's general lack of treatment prior to March 31, 2010 directly contradicts her allegations of disability, and the record contains only two progress notes before the date last insured; (4) one would expect a totally disabled individual with the type of symptoms and limitations as alleged by Plaintiff to consistently seek out and obtain medical treatment, and her failure to do so suggests she did not consider her symptoms to be serious enough to warrant any additional intervention; (5) Plaintiff acknowledged significant gaps in her treating history; (6) Plaintiff testified to experiencing frequent meltdowns in March 2010, but contemporaneous treatment notes reveal Plaintiff was "doing very well" and contain no reference to meltdowns; and (7) although during the administrative hearing Plaintiff described daily activities which were fairly limited, her description of daily activities during the relevant period six years prior cannot be objectively verified with any reasonable degree of certainty. ECF No. [23] at 25-26. Judge Valle correctly

found that these reasons for discounting Plaintiff's credibility were supported by substantial evidence.

Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's testimony because (1) having a "meltdown" does not necessarily require hospitalization; (2) infrequent treatment is a symptom of disability rather than an indication that Plaintiff's conditions are not severe; and (3) it is improper for the ALJ to discount Plaintiff's testimony because the statements could not be objectively verified. The Court is unpersuaded.

First, the ALJ discounted Plaintiff's testimony concerning her "meltdowns" because it was not supported by the record as a whole. Apart from never being treated at a hospital for these episodes, Plaintiff generally sought little treatment prior to March 31, 2010, and the treatment notes do not indicate that she experienced any such "meltdowns." To the contrary, Plaintiff's treatment notes from March 2010 reveal that she was doing very well.

Second, an "ALJ may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanations that might explain the failure to seek or pursue treatment." *Beegle v. Soc. Sec. Admin., Com'r*, 482 F. App'x 483, 487 (11th Cir. 2012). Here, the ALJ properly considered Plaintiff's explanation for the gap in her treatment history — that Plaintiff lived far away from her doctor. ECF No. [10] at 55. Taking that explanation into account, the ALJ concluded that the evidence suggests that the claimant's symptoms were not as serious as alleged.

Plaintiff's cases are inapposite. Three of Plaintiff's cases stand for the proposition – not at issue here – that non-compliance with taking prescribed medications may be attributable to mental illness. *See Pate-Fires v. Astrue*, 564 F.3d 935, 946 (8th Cir. 2009) (finding the evidence overwhelmingly demonstrates plaintiff's failure to take her prescribed medication was

attributable to her schizoaffective or bipolar disorder); *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) ("ALJs assessing claimants with bipolar disorder must consider possible alternative explanations before concluding that non-compliance with medication supports an adverse credibility"); *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011) ("The administrative law judge found that [claimant]'s severe depression is well controlled by drugs—when she takes them—but ignored the fact that during manic spells [claimant] had stopped taking her medications (a common consequence of mania)")). Plaintiff's fourth case recognized that "an unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's pain testimony," but found it inappropriate to reject "a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999) (internal quotations omitted). However, that case is inapposite as Plaintiff does not claim that she was unable to afford her treatment.

Finally, Plaintiff cites to several cases criticizing the discounting of a claimant's self-reports about limitations in daily activities that could not be objectively verified. *See* ECF No. [24] at 6. However, an ALJ may properly find that a claimant's testimony about limited daily activities is not credible where the statements were hard to objectively verify, given the weak medical evidence in support of the testimony. *Anderson v. Comm'r of Soc. Sec.*, 427 F. App'x 761, 764 (11th Cir. 2011); *see also Fielder v. Colvin*, 2014 WL 684683, at *15 (N.D. Fla. Feb. 21, 2014) (applying rule). As in *Anderson*, here the ALJ found that "even if the claimant's daily activities were truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the **relatively weak medical evidence** and other factors discussed in this decision . . ." ECF No. [10] at 57

(emphasis added). Moreover, contrary to the cases cited by Plaintiff, the ALJ specifically identified the Plaintiff's general lack of treatment as an additional factor that made it difficult to attribute Plaintiff's limitation to the claimed medical condition. *Id.*; *see Beegle v. Soc. Sec. Admin., Com'r*, 482 F. App'x 483, 487 (11th Cir. 2012) ("When evaluating a claimant's statements regarding his symptoms and their functional effects, the ALJ may consider whether the level or frequency of treatment is consistent with the level of complaints").

## IV. CONCLUSION

Upon review, the Court finds Judge Valle's Report and Recommendation to be well reasoned and correct. This Court finds that the ALJ applied the proper legal standard and supported her findings regarding Plaintiff's allegations with substantial evidence. The Court agrees with the analysis in Judge Valle's Report and Recommendation and concludes that Plaintiff's Motion for Summary Judgment must be denied, and that Defendant's Motion for Summary Judgment must be granted.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Magistrate Judge Valle's Report and Recommendation, **ECF No. [23]**, is **ADOPTED**;

2. Plaintiff's Motion for Summary Judgment, **ECF No. [13]**, is **DENIED**;

3. Defendant's Motion for Summary Judgment, **ECF No. [14]**, is **GRANTED**;

4. The ALJ's Decision is **AFFIRMED**;

5. Plaintiff's Objections, **ECF No. [24],** are **OVERRULED.**

6. To the extent not otherwise disposed of, all pending motions are **DENIED** as moot;

7. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 25th day of September, 2018.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

The Honorable Alicia O. Valle

Counsel of Record